IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL KENDRICK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 22-1805 |
| | ) | District Judge William S. Stickman |
| v. | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| C.O. SHAW, *sued in his official and individual capacity*, | ) | Re: ECF No. 40 |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

Pending before the Court is a Motion for Summary Judgment filed on behalf of Defendant C.O. Shaw ("Shaw"). ECF No. 40. For the following reasons, it is respectfully recommended that the Motion for Summary Judgment be granted in part and denied in part.

### II.   REPORT

#### A.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Paul Kendrick ("Kendrick") is a prisoner incarcerated at the State Correctional Institution at Fayette ("SCI – Fayette"). He brings this *pro se* civil rights action under 42 U.S.C. § 1983 and asserts an Eight Amendment claim against Shaw, an SCI – Fayette Corrections Officer, for the alleged excessive use of force. ECF No. 5. Kendrick also alleges state law assault and battery claims. Id. The facts below derive from Kendrick's Complaint, filed under penalty of perjury, and the undisputed evidence of record, unless otherwise noted.

As to the underlying incident, the parties accounts markedly differ. On July 2, 2022, Kendrick was incarcerated at SCI – Fayette in administrative custody. Kendrick alleges that

1

sustained injuries in an unplanned use of force incident that occurred when Shaw escorted Kendrick to a property room to receive a box containing personal items. Id. at 2. He contends that during the exchange, Shaw threatened him with physical force and then ordered Kendrick to step forward to turn on a television set to determine whether it was working order. When Kendrick moved toward the television, Shaw grabbed him and swung him to the ground. Kendrick "felt and heard his elbow pop." Id. at 3. Shaw laid on Kendrick's chest and repeatedly punched Kendrick in the face and neck while stating, "I told you I was going to get you." Id. During the incident, Kendrick was handcuffed and sustained "deeper cuts" to his wrist because Shaw twisted Kendrick's wrist and asked, "How do you like that?" Kendrick contends he did not resist or threaten Shaw "in any fashion." Id.; ECF No. 52-6 at 26.

      Shaw disputes Kendrick's account and contends that Kendrick became orally abusive when he was denied property considered contraband by DOC or prison policy. ECF No. 42 at 10-11. Shaw states that C.O. Ainsley was present during the interaction, and that Kendrick threatened both officers with physical violence. At that point, Shaw and Ainsley approached Kendrick to return him to his cell, "and he shrugged them off." Id. at 11. Kendrick's shoulder contacted Shaw's face and caused a "slight brush burn underneath [Shaw's] eye." Id. "[A]t that time, [Kendrick] was placed on the ground in recovery position, and the unit was notified that they needed assistance in the property room." Id. Shaw denies punching or elbowing Kendrick and contends that Kendrick continued to move and squirm despite attempts to control his movements. Id. at 12. Ainsley denies that Shaw punched, struck, or elbowed Kendrick, and denies that Shaw threatened Kendrick. Id. at 15. The room where the incident occurred lacks a security camera and it is undisputed that there is no video of the use of force incident. ECF No. 43-7 at 5.

Shaw presents a Medical Incident/Injury Report that states that Kendrick at first failed to cooperate with a medical assessment. ECF No. 42 at 6. Upon placement in "IRS," Kendrick cooperated and stated he had no complaints of pain or shortness of breath. He "had a steady gait, no signs of trauma, did not appear confused or unable to finish a sentence and showed no signs of shortness of breath or respiratory distress." Id.

It is undisputed that photographs taken after the incident depict superficial injuries to Kendrick's face, hands, wrists, and right elbow. Id. at 7.

On July 3, 2022, Kendrick submitted Grievance No. 987439, and alleged that Shaw threatened him, stating that "I do know why your [sic] in the hole."[1] Id. at 4; ECF No. 43-3 at 2. Kendrick complained that Shaw then taunted and assaulted him, and that the assault resulted in injuries to his wrist, elbow, face, and neck. Id. He requested punitive damages, an order of separation from Shaw, and that any video and photographic evidence be preserved. Id. The Grievance Coordinator accepted the grievance on July 5, 2022. According to the Pennsylvania Department of Corrections Inmate Grievance System Policy Statement, after a grievance is accepted, "[t]he Grievance Officer shall … [provide a response] to the inmate within 15 working days from the date the grievance was entered" into the Grievance Tracking System. ECF No. 43-2 at 11. Thus. the Grievance Officer marked Kendrick's grievance with the "due" date of July 26, 2022. ECF No. 43-3 at 2. On August 8, 2022, Kendrick submitted an Appeal to Facility Manager and stated that the time for a response had passed, and that he was seeking compensation in the amount of $300,000 in punitive damages because of Shaw's unlawful use of force. ECF No. 52-2 at 2. On August 9, 2022, the Facility Grievance Coordinator sent Kendrick an "Initial Level

---

[1] This is an apparent reference to criminal charges pending against Kendrick in the Somerset County Pennsylvania Court of Common Pleas at Docket Number CP-56-CR0000264-2018 for the February 15, 2018 murder of a corrections officer and the assault of another officer at SCI-Somerset. See Kendrick v. Little, No. 23-cv-187 at ECF No. 53 (W.D. Pa. Sept. 18, 2023).

Extension" form and stated that additional time to respond was necessary "to appropriately investigate and respond to your allegations of abuse." ECF No. 52-3. The grievance was denied 9 months later, on May 23, 2023 – five months after Kendrick filed this litigation. ECF No. 43-3 at 4.

Kendrick commenced this action on December 16, 2022, with a Motion for Leave to Proceed *in forma pauperis* ("*IFP*"). ECF No. 1. The Court granted the motion to proceed *IFP* on January 6, 2023, and the Complaint was filed that day. ECF Nos. 4, 5. After service of the Complaint, Shaw filed his Answer. ECF No. 16. The Court issued two Case Management Orders. ECF Nos. 119, 24. The Court later granted Kendrick's motion to extend time to complete discovery. ECF Nos. 31, 32. At the conclusion of discovery, Shaw filed the pending Motion for Summary Judgment, Brief in Support, Concise Statement of Material Facts, and Appendix to the Concise Statement of Material Facts containing relevant exhibits. ECF Nos. 40-43. Kendrick filed his Response to the Motion for Summary Judgment with a Declaration in Opposition to Defendant's Motion for Summary Judgment, a Statement of Disputed Factual Issues, and a Brief in Opposition to the Motion for Summary Judgment with Exhibits. ECF Nos. 50-52.

The Motion for Summary Judgment is ripe for consideration.

B.   **STANDARD OF REVIEW**

Summary judgment is properly entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In making this assessment, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-

4

48 (1986). "[A] fact is 'material' where 'its existence or nonexistence might impact the outcome of the suit under the applicable substantive law.'" Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 752 (3d Cir. 2019) (citations omitted). Further, "[a] dispute is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" Clews v. Cnty. of Schuylkill, 12 F.4th 353, 358 (3d Cir. 2021) (quoting Anderson, 477 U.S. at 248).

The court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences and resolve all doubts in favor of the nonmoving party. Matreale v. N.J. Dep't of Mil. & Veterans Affs., 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 requires the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322–23; Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

Kendrick is proceeding *pro se*. A filing from a *pro se* litigant is to be "liberally construed" and a "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 206 (1976)); see also Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Additionally, when considering a motion in a *pro se* plaintiff's case, a court must "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." Holley v. Dep't of Veteran's Affs., 165 F.3d 244, 247-48 (3d Cir. 1999). On a motion for summary judgment, however, "a *pro se* plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for

5

summary judgment." Thompson v. Slatzer, No. 1:19-0028, 2021 WL 3639682, at *4 (W.D. Pa. July 30, 2021), *report and recommendation adopted*, 2021 WL 3635110 (W.D. Pa. Aug. 17, 2021) (quoting Dawson v. Cook, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted)). "Put another way, just because a non-moving party is proceeding pro se, he is not relieved of [the] 'obligation under Rule 56(c) to produce evidence that raises a genuine issue of material fact.'" Id. (citations omitted).

    C.    **DISCUSSION**

        1.    **Exhaustion of Administrative Remedies**

Shaw contends that Kendrick failed to properly exhaust administrative remedies by failing to timely appeal the denial of his grievance related to the incident at issue. ECF No. 41 at 5-7. For the following reasons, the prison's failure to timely respond to Kendrick's grievance precludes the entry of summary judgment based on exhaustion.

The Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The United States Court of Appeals for the Third Circuit has explained that the PLRA's exhaustion requirement serves the following Congressional objectives: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004). As the statute's language makes clear, the exhaustion requirement is mandatory and applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some

6

other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see also Woodford v. Ngo, 548 U.S. 81, 85 (2006).

The exhaustion requirement of the PLRA is one of "proper exhaustion." Woodford, 548 U.S. at 84. Failure to comply with the procedural requirements of the available grievance system will result in a claim being found procedurally defaulted. Id. at 90; Spruill, 372 F.3d at 227-32; Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 153 (3d Cir. 2016). In assessing default, the prison's grievance policy is what "define[s] the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).

The Pennsylvania Department of Corrections' administrative remedies for inmate grievances are provided for in DOC Administrative Directive 804 ("DC-ADM 804"). See DOC Policies, DC-ADM 804, Inmate Grievance System Policy.[2] DC-ADM 804 provides a three-step process through which inmates can seek to resolve issues relating to their incarceration. Id. The three steps are: (1) file an initial grievance; (2) appeal to the superintendent; and (3) final appeal to SOIGA. Redshaw v. Pillai, No. 12-190J, 2013 WL 3802464, at *3 (W.D. Pa. July 18, 2013). An inmate must follow each of the steps to properly exhaust his administrative remedies under the PLRA. See Booth v. Churner, 206 F.3d 289, 299 (3d Cir. 2000), *aff'd*, 532 U.S. 731(2001) (holding that plaintiff "did not take full advantage of the administrative procedures available to him" in failing to use steps two and three of DC-ADM 804).

In this case, Shaw contends that Kendrick's failure to appeal to the superintendent and submit a final appeal to SOIGA bars his claim. ECF No. 41 at 7. However, the grievance policy also requires that the initial grievance response be provided to the inmate within 15 working days, unless an extension of ten more working days is requested from the Facility Grievance Coordinator

---

[2] https://www.cor.pa.gov/About%20Us/Pages/DOC-Policies.aspx

because an investigation of the grievance is ongoing. See DC-ADM 804, §1.C.5.g,h; ECF No. 43-2 at 11-12. It is undisputed that Kendrick presented Grievance No. 987439 on July 3, 2022, and the grievance was entered into the Automated Inmate Grievance Tracking System on July 5, 2022. ECF No. 42 ¶ 14; ECF No. 52-2 at 1. The Court takes judicial notice that fifteen working days expired on July 26, 2022. There is no evidence that an extension of time was requested before July 26, 2022, and the time to respond lapsed as of that date. ECF No. 52-2.

Shaw does not address the failure to timely respond but provides evidence that "[o]n August 9, 2022, Plaintiff received an Initial Level Extension in which he was provided notice that staff required an extension for responding to his grievance." It is undisputed that Plaintiff did not receive an Initial Review Response from the assigned grievance officer until May 23, 2023, some nine months later. ECF No. 42 ¶ 23.

In Shifflett v. Korszniak, 934 F.3d 356, 365-66 (3d Cir. 2019), the Third Circuit held that when an inmate submits a timely grievance appeal but fails to receive a response within the time specified in the grievance policy, "[a]t that moment he obtain[s] the right to come into federal court." "The PLRA requires that prisoners comply with the procedural demands of a system created by their jailors. No less must prisons comply with the demands of the system they created. Hence we hold that as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." Id.

Shaw presents no grounds to avoid the holding in Shifflett. Accordingly, it is recommended that the Court deny the Motion for Summary Judgment based on exhaustion.

##       2.       Eighth Amendment – Excessive Force

"Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Thus, the Eighth Amendment provides a remedy when prison officials unnecessarily and wantonly inflict pain on prisoners in a manner that offends contemporary standards of decency. See Hudson v. McMillian, 503 U.S. 1, 8 (1992). Courts look to several factors to determine whether a correctional officer has used excessive force in violation of the Eighth Amendment, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986), *abrogated on other grounds by* Wilkins v. Gaddy, 559 U.S. 34 (2010)). The central question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. "Summary judgment in favor of a defendant is not appropriate if 'it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain.'" Brooks, 204 F.3d at 106 (quoting Whitley, 475 U.S. at 322).

Shaw argues that application of the five Whitley factors requires the entry of summary judgment in his favor. Id. Shaw contends that Kendrick's version of events is "wholly unsupported by the record viewed in the light most favorable to Plaintiff. No evidence adduced in discovery supports Plaintiff's allegations." ECF No. 41 at 9. Shaw also argues that Kendrick suffered only superficial injuries and thus cannot establish an Eighth Amendment claim. Id. at 10.

Shaw's argument fails to address or account for Kendrick's Complaint, deposition testimony, and "Declaration in Opposition to Defendant['s] Motion for Summary Judgment," all of which are sworn to under penalty of law. ECF No. 5 at 5; ECF No. 52-6 at 4, 12-28; ECF No. 50. See Parkell, at 320 n.2 (verified complaints and other court filings signed under penalty of perjury in accordance with 28 U.S.C. § 1746 are considered equivalent to statements in an affidavit and are properly considered in opposition to summary judgment). In the referenced documents, Kendrick presents evidence to refute Shaw's arguments related to the need for the use of force, the extent of force used, whether Shaw reasonably perceived a threat to his or any other individual's safety at the time force was employed, and whether Shaw attempted to temper the severity of the force used. In addition, as to the purportedly *de minimis* nature of the force used, Kendrick states that while he was handcuffed and laying on the ground, Shaw repeatedly punched him in the face without a basis to do so, and that he sustained injuries to his wrist and elbow. ECF No. 52 at 6-7, ECF No. 50 at 3.

Turning to the severity of injuries sustained, in Smith v. Mensinger, 293 F.3d 641, 648-49 (3d Cir. 2002), the United States Court of Appeals for the Third Circuit declined to find that an asserted *de minimis* injury can defeat an excessive use of force claim. Instead, "injuries are only one of several factors that a court must consider" to determine whether force was applied in a good-faith effort to maintain or restore discipline. Id. (citing Brooks, 204 F.3d at 108) (*de minimis* injuries do not necessarily establish *de minimis* force). In the case before it, the record contained evidence that the plaintiff was handcuffed and had been punched and kicked while under the control of at least six prison guards. With no extraordinary circumstances to justify that kind of force, the Third Circuit concluded that the evidence was sufficient to create a genuine issue of material fact.

In this case, Kendrick's statements related to the necessity and circumstances of the use of force present several material issues fact about each Whitley factor that cannot be resolved without assessing witness credibility – a task left for the factfinder – here, a jury. Therefore, it is recommended that the Court deny the Motion for Summary Judgment as to Kendrick's Eighth Amendment excessive use of force claim.

### 3. Official Capacity Claims

Shaw argues that Kendrick cannot sustain a claim against him in his official capacity. ECF No. 40 at 2; ECF No. 41 at 3-5. The Court agrees that as to Kendrick's demand for monetary damages in Shaw's official capacity, the claim is properly dismissed as barred by the Eleventh Amendment. See Downey v. Pa. Dep't of Corr., 968 F.3d 299, 309-210 (3d Cir. 2020) (citing Kentucky v. Graham, 473 U.S. 159, 169 (1985))(noting that the "Eleventh Amendment immunity bars actions for retroactive relief against state officials in their official capacity.").

That said, Shaw fails to address Kendrick's separate requests declaratory and injunctive relief. ECF No. 52 at 2. Kendrick argues that such relief is not barred by sovereign immunity. Id. (citing Ex parte Young, 209 U.S. 123, 159-60 (1908); Verizon Md., Inc. v. Pub. Serv. Comm'n, 535 U.S. 635, 645 (2002); and MCI Telecomm. Corp. v. Bell Atl. Pennsylvania, 271 F.3d 491, 506 (3d Cir. 2001)).

"'[C]laims requesting prospective injunctive relief from official-capacity defendants do not run afoul of sovereign immunity.'" Morris v. Scheuer, No. 22-cv-00082, 2023 WL 2088169, at *3 (W.D. Pa. Feb. 17, 2023) (citing Iles v. de Jongh, 638 F.3d 169, 177 (3d Cir. 2011)). To avoid the bar of the Eleventh Amendment, "[t]he relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective...." MCI Telecomm., 271 F.3d at 506 (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102 (1984)). "In

11

determining whether the Eleventh Amendment bars the claim, 'a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Morris, 2023 WL 2088169, at *3 (citing Verizon, 535 U.S. at 645 (alteration in original)).

Upon review, Kendrick's claim for declaratory judgment stating that Shaw's "physical abuse" violated his rights under the Eighth Amendment is retrospective. "A request for declaratory relief is not an appropriate avenue to challenge violations of rights that have already occurred." Cnty. of Butler v. Wolf, No. 20-cv-677, 2020 WL 2769105, at *3 (W.D. Pa. May 28, 2020) (citing Corliss v. Obrien, 200 F. App'x. 80 (3d. Cir. 2006))." "'Nor is declaratory judgment meant simply to proclaim that one party is liable to another.'" Id. (quoting Corliss at 84-5 and citing ACLU of Massachusetts v. U.S. Conf. of Cath. Bishops, 705 F.3d 44, 53 (1st Cir. 2013) ("With limited exceptions, not present here, issuance of a declaratory judgment deeming past conduct illegal is also not permissible as it would be merely advisory.")). "The remedy for examining allegations of past violations of constitutional rights and for determining liability and damages for the same is a traditional action for damages under 28 U.S.C. § 1983." Butler, 2020 WL 2769105, at *3. Thus, summary judgment is properly entered in Shaw's favor as to Kendrick's retrospective claim for declaratory relief.

Yet Kendrick also seeks an injunction ordering Shaw to be separated from him to avoid "future abuse," and asserts that he remains incarcerated in the same facility where the incident occurred and in the same unit that Shaw is assigned. Id.; see also ECF No. 5 at 4; ECF No. 43-8 at 38. Thus, his request for injunctive relief is prospective. This claim has not been addressed by Shaw, who provides no basis to disallow it. See Parkell v. Danberg, 833 F.3d 313, 332 (3d Cir. 2016) (citing Argueta v. U.S. Immigr. & Customs Enf't, 643 F.3d 60, 70, 77 (3d Cir. 2011)

(Plaintiffs "are still free to pursue their official capacity claims for injunctive relief against any further intimidation or unlawful entry into their home."); Koehl v. Dalsheim, 85 F.3d 86, 88–89 (2d Cir. 1996) (similar)).

That said, Kendrick has not established that Shaw has the authority to respond to the requested relief involving a separation order or placement in a different unit or facility. Parkell, 833 F.3d at 332 ("In seeking a prospective injunction against the implementation of an unconstitutional state policy, [plaintiff] is required to name an official or officials 'who can appropriately respond to injunctive relief.'")(citing Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1127 (9th Cir. 2013); Gonzalez v. Feinerman, 663 F.3d 311, 315 (7th Cir. 2011) (per curiam) (proper defendant is one "responsible for ensuring that any injunctive relief is carried out")).

Shaw's motion thus requires the Court to consider an undeveloped record related to Kendrick's continued placement in a facility and unit with Shaw if a jury determines that Shaw violated Kendrick's Eighth Amendment rights. The record also fails to provide evidence about Shaw's ability to implement the requested relief in the form of reassignment. Given the material factual issues to be resolved, it is recommended that the Court deny the Motion for Summary Judgment as to Kendrick's request for injunctive relief without prejudice to be raised at trial.

### 4. State Law Claims

Shaw seeks summary judgment in his favor as to Kendrick's state law claims for assault and battery based on sovereign immunity under Pennsylvania law. ECF No. 41 at 11-14 (citing 1 Pa. C.S. § 2310 and 42 Pa. C.S. § 8522). Shaw correctly states that as a DOC employee, he is entitled to immunity for intentional torts including assault and battery if committed within the scope of his employment. Morris, 2024 WL 2188585, at *7 (citing Brown v. Smith, No. 1: 18-cv-

13

00193, 2019 WL 2411749, at *4 (W.D. Pa. June 7, 2019) (noting that assault and battery fall outside Pennsylvania's waiver of sovereign immunity for claims against Commonwealth employees). Under Pennsylvania law:

> Conduct of [an employee] is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the [employer], and (d) if force is intentionally used by the [employee] against another, the use of force is not unexpectable by the [employer].
>
> Fought v. City of Wilkes-Barre, Pennsylvania, 466 F. Supp.3d 477, 521 (M.D. Pa. 2020) (quoting Restatement (Second) of Agency § 228(1) (1958)). An employee can be found to be acting within the scope of their employment even where the employee acts intentionally or criminally. Tibbens [v. Snyder, No. 18-cv-2112, 2020 WL 5372097, at *5 (M.D. Pa. June 24, 2020)]. Conduct falls outside the scope of employment if the conduct is done in an outrageous manner. Abney v. Younker, No. 1:13-CV-1418, 2019 WL 7812383, at *9 (M.D. Pa. Oct. 3, 2019), *report and recommendation adopted*, No. 1:13-CV-01418, 2020 WL 488894 (M.D. Pa. Jan. 30, 2020).

Id. at *5–6. "[C]ourts in this Circuit have held that intentionally tortious conduct which is unprovoked, unnecessary, or unjustified by security concerns or penological goals does not fall within the scope of employment for purposes of sovereign immunity." Morris, at *7 (quoting Angle v. Smith, No. 1:22-cv-33, 2023 WL 2873255, at *8 (W.D. Pa. Feb. 7, 2023) (internal quotation marks omitted)). See also Abney, 2019 WL 7812383, at * 9 ("a correctional officer is not acting within the scope of his or her employment, and thus not entitled to the protection of sovereign immunity, when they assault an inmate without justification"); Gray v. Wakefield, No. 09-cv-0979, 2014 WL 2526619, at *4 (M.D. Pa. June 4, 2014) (explaining that, where the use of force by corrections officers is unprovoked, unnecessary, and unjustified by security concerns or penological goals, it does not, as a matter of law, fall within the scope of employment); Robus v. Pennsylvania Dep't of Corr., No. 04-2175, 2006 WL 2060615, at *8 (E.D. Pa. July 20, 2006) ("[I]n Pennsylvania, 'an assault committed by an employee upon another for personal reasons ... is not

actuated by an intent to perform the business of the employer and, as such, is not within the scope of employment.'" (quoting R.A. ex rel. N.A. v. First Church of Christ, 748 A.2d 692, 700 (Pa. Super. 2000))); but see Robus at * 9 ("As for the final requirement, if Robus's allegations are true, the force used by Hardnett and Humphrey and ordered by DiGuglielmo was reprehensible, but not entirely unexpectable. As one court observed in a case involving guards who severely beat an inmate, '[s]uch acts, while barbaric, do not represent such a great departure from the roughhewn reality of a correction officer's daily routine as to fall outside of the scope of ... employment.'" (quoting Pizzuto v. County of Nassau, 239 F. Supp. 2d 301, 315 (E.D.N.Y. 2003))).

The evidence presented by the parties presents material issues of fact as to whether Shaw's use of force fell within the scope of his employment. Thus, it is recommended that the Court deny the Motion for Summary Judgment motion as to the state law assault and battery claims.

### D.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion for Summary Judgment, ECF No. 40, be granted as to Kendrick's retrospective claims for monetary damages and declaratory judgment against Shaw in his official capacity, but denied on all other grounds.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties may file written objections within fourteen days, or seventeen days for unregistered ECF Users. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal.  Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir.

2011). Any party opposing objections may respond to the objections within 14 days in accordance with Local Civil Rule 72.D.2.

                              Respectfully submitted,

                              */s/  Maureen P. Kelly*
                              MAUREEN P. KELLY
                              UNITED STATES MAGISTRATE JUDGE

Dated: August 20, 2024

cc:      The Honorable William S. Stickman
         United States District Judge

         All counsel of record by Notice of Electronic Filing